UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD A. SEATON, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18CV105 NAB |
| | ) | |
| JOHNSON COUNTY JAIL, ET AL., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Richard A. Seaton, Sr. for leave to proceed in forma pauperis. (Docket No. 2). He has also filed a motion to appoint counsel (Docket No. 4) and a motion for preliminary injunction and temporary restraining order (Docket No. 5). Having reviewed the motion to proceed in forma pauperis and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $45.56. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will deny plaintiff's motion for appointment of counsel and his motion for preliminary injunction and temporary restraining order, and will direct plaintiff to file an amended complaint on a Court-provided form.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-

month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of plaintiff's motion to proceed in forma pauperis, he provided an affidavit and a certified inmate account statement. (Docket No. 3). The certified inmate account statement shows an average monthly deposit of $227.29. The Court will therefore assess an initial partial filing fee of $45.56, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual

allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is currently incarcerated at Northeast Correctional Center in Bowling Green, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint is handwritten and not on a Court-provided form. His complaint names the following defendants: Johnson County Jail Medical Director; John or Jane Does and Medical Staff; John and Jane Does of the Jail; Superintendent John/Jane Does; Missouri Department of Corrections; Director Anne L. Precythe; Corizon Health Services; Nurse Dawn Wade; I.R.R. reviewer John/Jane Doe; Health Services Administrator Lisa Ivy; Medical Director Robert Wudel; Assistant Warden John/Jane

3

Doe; J. Cofield; and Assistant Regional Medical Director T. Bredeman. (Docket No. 1 at 2-3). Defendants are sued in their official and individual capacities. (Docket No. 1 at 3).

Plaintiff states that he was incarcerated at the Johnson County Jail in Warrensburg, Missouri while awaiting his trial and sentencing. During that time, he alleges that he was seen by medical staff at the county jail, but subsequently denied medical treatment for his vision. Specifically, plaintiff states that he suffers from macular degeneration, and that the denial of required treatment caused him the irreparable loss of vision. Plaintiff alleges this occurred between January 10, 2014 and August 24, 2015.

Plaintiff's diagnosis of macular degeneration occurred in August 2006. (Docket No. 1-1 at 1). His treatment consisted of a shot in his eye given every two to three months. Plaintiff asserts that he was told by his treating physician that he would need these shots for the rest of his life in order to maintain his vision. On January 10, 2014, plaintiff states that he was arrested and extradited to the Johnson County Jail. (Docket No. 1-1 at 3). He remained there until August 2015, when he was transferred to the Missouri Department of Corrections.

Plaintiff claims that he told the doctor at the Johnson County Jail that he needed to continue his shots or he would become blind. He alleges that he was advised that he could not be sent to a retina specialist.

After twenty months in the Johnson County Jail, plaintiff was transferred to the Fulton Reception and Diagnostic Center. Plaintiff states that he was sent to a hospital in Columbia, where his right eye was examined. He learned that his retina was covered with scar tissue and that this could not be repaired. He states that in September 2015, after the Department of Corrections confirmed that his right eye was scarred and blind, he was troubled by loss of depth-

of-field. (Docket No. 1-1 at 4). In January 2016, plaintiff noticed on the Amsler Grid[1] that his age-related macular degeneration was beginning in his left eye. Plaintiff asserts that the Missouri Department of Corrections defendants denied him proscribed treatment by "Expert Doctors" and caused his vision to be "totally lost."

Plaintiff seeks a preliminary and permanent injunction requiring defendants to provide him the medical treatment necessary for him to obtain eyesight in both eyes. (Docket No. 1 at 6). He also seeks compensatory damages in the amount of $25 million against each defendant, and punitive damages in the amount of $25 million against each defendant. (Docket No. 1 at 7).

## Discussion

Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983. He alleges that defendants violated his constitutional rights by acting with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976). Plaintiff's allegations regarding his loss of vision are serious and, if adequately pled, may be sufficient for purposes of § 1915 review. However, plaintiff's complaint in its current form is deficient.

### A. Improper Venue for Johnson County Defendants

Plaintiff's allegations against the Johnson County defendants, which include the Johnson County Jail Medical Director, John or Jane Does and Medical Staff, John and Jane Does of the Jail, and Superintendent John/Jane Does, are not brought in the proper venue.

Under 28 U.S.C. § 1391(b), a civil action may only be brought in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

---

[1] The Amsler Grid is a diagnostic tool used to detect vision problems resulting from damage to the macula or the optic nerve. It consists of a grid of horizontal and vertical lines used to monitor an individual's central visual field.

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

The Johnson County Jail is located in Johnson County, Missouri. Johnson County is located within the Western Division of the Western District of Missouri. *See* 28 U.S.C. § 105(b)(1). Because the Johnson County defendants are located in the Western District, and because the events that give rise to those claims occurred in the Western District, venue is proper there. In other words, plaintiff's claims regarding the Johnson County defendants must be made in the United States District Court for the Western District of Missouri.

Since plaintiff's complaint contains claims arising in the Eastern District of Missouri as well as the Western District, the Court cannot simply transfer this case to the Western District of Missouri pursuant to 28 U.S.C. § 1406(b). Therefore, the Court advises plaintiff that in filing his amended complaint, he should not include those claims arising out of Johnson County. Rather, plaintiff's Johnson County claims must be brought in a separate action filed with the United States District Court for the Western District of Missouri. Plaintiff is advised that § 1983 claims are analogous to personal injury claims and are subject to Missouri's five-year statute of limitations. *See Sulik v. Taney County, Mo.*, 393 F.3d 765, 766-67 (8th Cir. 2005). Accordingly, if he chooses to file his Johnson County claims in the Western District of Missouri, he should do so expeditiously.

**B. Missouri Department of Corrections Defendants**

As noted above, plaintiff's claims against the Missouri Department of Corrections defendants are serious, and if properly pled, could survive § 1915 review. However, as presently constituted, plaintiff's complaint fails to state a claim.

6

In a § 1983 case, liability is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Here, plaintiff fails to allege the direct responsibility of each of the named defendants for violating his constitutional rights. Instead, he generally outlines his medical situation and then relies on vague and conclusory language in asserting liability, rather than showing a nexus between each defendant and the harm he or she personally caused.

Plaintiff appears to rely heavily on the various defendants' positions of authority in asserting his claims. However, this is not, in and of itself, enough to support liability. *See Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018) (stating that vicarious liability is inapplicable to § 1983 suits); *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012) (stating that prison supervisors "cannot be held liable under § 1983 on a theory of respondeat superior"); and *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (stating that "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). For instance, plaintiff names Health Services Administrator Lisa Ivy as a defendant, but does not make any direct allegations against her. That is, he does not allege that she denied him treatment at any point.

Because plaintiff's allegations are serious, and because he is proceeding pro se, he will be given the opportunity to amend his complaint according to the instructions set forth below.

Plaintiff should type or neatly print the amended complaint on the Court-provided form that will be provided to him. *See* E.D. Mo. L.R. 45 – 2.06(A) ("All actions brought by pro se

plaintiffs or petitioners should be filed on Court-provided forms"). In the "Caption" section of the Court-provided form, plaintiff should clearly name each and every party he is intending to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If plaintiff includes unknown parties, such as John or Jane Does, he must make allegations against them that are specific enough to permit their identity to be ascertained after reasonable discovery. *See Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b). Plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow the same procedure for each defendant. It is not sufficient for plaintiff to state that he was harmed, and simply blame all named defendants as a group. Instead, factual allegations have to be made against each particular defendant that is named.

Plaintiff is advised that he is not required to provide legal citations and that he should not make legal arguments. Instead, it is important that plaintiff establish the responsibility of each separate defendant for harming him. That is, for each defendant, plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. *See Madewell*, 909 F.2d at 1208. There must be a connection between the named defendant and the harm suffered by plaintiff, in order that the defendant receive fair notice of the nature and basis of the claim against him or her. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848

(8th Cir. 2014). The Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If plaintiff sues a governmental entity, rather than an individual, he must allege that he suffered a constitutional violation as a result of that entity's official policy, unofficial custom, or deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Likewise, if he sues an individual in his or her official capacity, that suit is actually against the individual's employer, and plaintiff must allege the existence of an unconstitutional policy, unofficial custom, or deliberately indifferent failure to train or supervise.

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect"). If plaintiff fails to file an amended complaint on a Court-provided form within thirty days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

### C. Plaintiff's Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). *See also Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) ("In civil cases, there is no constitutional or statutory right to appointed counsel…Rather a court may request an attorney to represent any person unable to afford counsel"). A district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, the Court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. The Court will entertain future motions for appointment of counsel as the case progresses.

### D. Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order

Plaintiff has filed a motion for preliminary injunction and temporary restraining order. (Docket No. 5). Some of the factual allegations in the motion are similar to those in the complaint, but much of the motion relates to a denial of care at the Johnson County Jail. Plaintiff states that he was denied medical care and treatment that was prescribed by an optometrist. (Docket No. 5 at 1). He states that this occurred at the Johnson County Jail from January 2014 to

August 2015. He further states that he was denied treatment by the Missouri Department of Corrections from August 2015 to the present. He alleges that he did not receive the proper treatment because of cost concerns. (Docket No. 5 at 2). Plaintiff's motion also contains factual allegations that do not appear in the complaint. He states, for example, that he did receive assistive devices or a course called "Blind-Therapy Arts." (Docket No. 5 at 3). Plaintiff seeks an order requiring defendants to arrange for his eye shots and to follow a plan of therapeutic treatment by a qualified specialist. (Docket No. 5 at 5).

"A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted). "[A] request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). To determine whether preliminary injunctive relief is warranted, the Court must balance the threat of irreparable harm to movant, the potential harm to the nonmoving party should an injunction issue, the likelihood of success on the merits, and the public interest. *Dataphase Sys. v. CL Sys.*, 640 F.2d 109, 113-14 (8th Cir. 1981). "The party seeking injunctive relief bears the burden of proving all the *Dataphase* factors." *Watkins*, 346 F.3d at 844.

As with his complaint, plaintiff's motion contains serious allegations. However, as with the complaint, the motion is defective. First, the motion contains allegations against the Johnson County defendants, and refers to occurrences taking place between January 2014 and August 2015. A preliminary injunction, however, is meant to preserve the status quo, not correct past wrongs. *See Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008) (stating that prisoner's request for injunctive relief in § 1983 action for excessive force during cell transfer was mooted

11

by prisoner's transfer to another facility). Plaintiff is no longer at the Johnson County Jail, so injunctive relief is not available relating to occurrences that happened there. Moreover, Johnson County is within the Western Division of the Western District of Missouri; thus, claims regarding events occurring within Johnson County must be brought before the United States District Court for the Western District of Missouri.

Furthermore, plaintiff's motion refers to the defendants only generally, as a group, making the responsibility of each specific defendant unclear. He relies on the defendants' collective positions of authority, rather than alleging what each defendant actually did or did not do to harm him. For instance, he requests that defendant Anne Precythe, the Director of the Missouri Department of Corrections, be ordered to carry out his treatment plan at his current place of incarceration, but provides no basis for this direction. He does not allege that Precythe is his doctor, is responsible for providing him with medical treatment, or that she even knows about his medical condition in the first place. Instead, he relies on her position as Director of the Missouri Department of Corrections. However, as discussed above, Precythe cannot be held liable under § 1983 merely because she holds a supervisory position. *See Marsh*, 902 F.3d at 754; *Luckert*, 684 F.3d at 817; and *Camberos*, 73 F.3d at 176.

Plaintiff has failed to tell the Court exactly which doctors at the Northeast Correctional Center have deliberately denied him medical care. He has also failed to properly articulate what his request for a mandatory injunction, requiring defendants to provide him with eye shots, will do to improve his condition, since he has alleged that he has already suffered irreparable vision loss and is totally blind. Due to plaintiff's failure to connect his alleged harms with the actions or inactions of specific defendants, he has not demonstrated a likelihood of success on the merits in his § 1983 action.

For the reasons discussed above, plaintiff's motion for preliminary injunction and temporary restraining order will be denied without prejudice at this time. Plaintiff may refile his motion along with his amended complaint if he so chooses. In doing so, plaintiff is advised that the Court must balance four factors in determining whether a preliminary injunction should be granted: (1) the threat of irreparable harm to movant; (2) the potential harm to the nonmoving party should an injunction issue; (3) the likelihood of success on the merits; and (4) the public interest. *See Watkins*, 346 F.3d at 844. Plaintiff has the burden of proving these factors.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $45.56 within thirty days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED at this time**.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction and temporary restraining order is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the Court's Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-provided form within **thirty (30) days** of the date of this Order. Plaintiff is advised that his

amended complaint will take the place of his original complaint and will be the only pleading that this Court will review.

**IT IS FURTHER ORDERED** that if plaintiff fails to comply with this Order, the Court will dismiss this action without prejudice. If the case is dismissed for non-compliance with this Order, the dismissal will not constitute a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that upon the filing of the amended complaint, the Court will review the amended complaint pursuant to 28 U.S.C. § 1915.

Dated this 11th day of December, 2018

　　　　　　　　　　　　　　　　/s/ Henry Edward Autrey
　　　　　　　　　　　　　　　　HENRY EDWARD AUTREY
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE